**James VOLANTY, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–82–379–CR.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 22, 1983.

898

Donald B. Dailey, Jr., Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and UTTER and YOUNG, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a conviction of aggravated robbery for which appellant received a sentence of twenty-years confinement in the Texas Department of Corrections. The issues presented in this case are: (1) whether the trial court erred in denying appellant's motion for a court-appointed

psychiatrist; (2) whether certain evidence was illegally seized at the time of appellant's arrest; and, (3) whether the trial court erred in denying appellant's motion to suppress his identification based upon alleged suggestive photographic line-ups. We affirm the judgment of the trial court.

Since the sufficiency of the evidence is not challenged, a factual overview of the entire case will not be necessary.

In his first four grounds of error, appellant asserts that the trial court erred in denying his motion for a court-appointed psychiatrist in violation of his rights to due process of law and effective assistance of counsel under the State and Federal Constitutions. Appellant urges on appeal that, without a court-appointed psychiatrist, he was unable to develop a case for mitigation of punishment under TEX.PENAL CODE ANN. § 8.04(b) (Vernon 1974). Appellant claims that his voluntary heroin intoxication caused his temporary insanity at the time of the offense and that the trial court abused its discretion by failing to appoint a psychiatrist.

■ Appointment of an expert witness under TEX.PENAL CODE ANN. art. 26.05 (Vernon 1974) rests within the sound discretion of the trial court. *Quin v. State,* 608 S.W.2d 937 (Tex.Cr.App.1980). Absent a showing of harm, no abuse of that discretion in the refusal to appoint an expert witness will be found. *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App.1977). The mere request for the assistance of a psychiatrist imposes no duty on the trial court to order a psychiatric examination or to appoint psychiatric witnesses. *Pedrero v. Wainwright,* 590 F.2d 1383 (5th Cir.1979). The defendant's sanity at the time of the offense must be "seriously in issue," *Bush v. McCollum,* 231 Supp. 560 (N.D.Tex.1964), affirmed 344 F.2d 672 (5th Cir.1965), or there must be a "reasonable ground to doubt" the defendant's sanity at the time of the offense, *Brinks v. Alabama,* 465 F.2d 446 (5th Cir. 1972), before the trial court has a constitutional duty to inquire further.

■ In his motion for a court-appointed psychiatrist, appellant alleged that, at the time of the alleged offense, he was a severely addicted heroin addict with a $1,000.00 a day drug habit and that, also at the time of the alleged offense, he was temporarily insane due to intoxication from drug usage. However, at the pretrial hearing on the motion, there was no evidence presented of the extent of appellant's drug addiction from which the trial court could validly make a decision on appellant's motion. *See Quin* at p. 938. Nothing in appellant's pretrial hearing or punishment phase presentations indicated that appellant did not know that his conduct was wrong or that he was unable to conform his conduct to the requirements of the law by reason of temporary insanity due to voluntary intoxication. *See Starvaggi v. State,* 593 S.W.2d 323 (Tex.Cr.App.1979). We hold that the trial court did not abuse its discretion in denying appellant's motion for court-appointed psychiatrist on the evidence that it had before it and that the denial of such psychiatric assistance did not deny appellant a fair trial or deprive him of effective assistance of counsel. *See Knight v. State,* 538 S.W.2d 101 (Tex.Cr.App.1975). Appellant's first through fourth grounds of error are overruled.

In his fifth ground of error, appellant asserts that the trial court erred in denying appellant's motion to suppress the evidence seized at an alleged illegal search incident to his arrest.

Police Officer J.D. Boch testified that he had been dispatched to investigate an armed robbery at the Gibraltar Savings and Loan Office immediately after the robbery had been reported. Officer Boch talked to the office manager Patsy Busey and employee Patricia Lopez, who were both present during the robbery and gave a description of the robbery in which money had been taken and of the armed robber (later identified as appellant). Officer Boch also talked to Robert De Los Santos who had seen a man (later identified as appellant), who had suspiciously fled from the Savings and Loan Office and got into a car driven by another. De Los Santos gave Officer

Boch a description of the fleeing man and the getaway car (including its driver and license plate number). Officer Boch dispatched over the police radio the descriptions of the robbery, the robber, the driver, the getaway car and the license plate number. Both Police Detective Edward Garza and his partner Police Officer Paul Rivers testified that they had heard the broadcasted information.

Police Detective Edward Garza gave the following undisputed testimony: About fifty minutes after the robbery of the Gibraltar Savings and Loan Office and after having heard the police radio report of the robbery describing the robbery in which money had been taken, the robber and the getaway car, Garza spotted the reported getaway car parked on a car lot and set up surveillance of the car and the car lot from a telephone booth across the street. Subsequently, a big man, who was later identified as Robert Volanty, appellant's brother, moved the car behind a trailer on the lot. Garza then relocated his surveillance point to a service station which was about seventy-five yards from the car lot. About one and one-half to two hours after the getaway car was first moved, Robert Volanty went to the getaway car again. Through his binoculars, Garza could see Robert Volanty open the driver's door, search under the front seat, take out some money, count it and go back into the trailer. About ten minutes later, Robert Volanty, two anglo men (one of whom was later identified as appellant) and one hispanic man came out of the trailer. They walked to a car other than the getaway car and appeared to be leaving. Appellant got into the back seat of the second car, while Robert Volanty went to the driver's door. At this time, Garza and two other police officers decided to move in and arrest the four. As he approached the second car, Garza saw appellant bend down and appear to put something underneath the floor mat on the back floor board of the car. Garza yelled, "What are you doing?" and the appellant replied, "nothing, nothing." Garza ran around to the driver's side and told appellant to get out. Garza then ran around to the passen-

ger side, opened the passenger door and ordered appellant out of the car. After opening the door, Garza could see a twenty dollar bill sticking out from underneath the floor mat. After getting appellant out of the car, Garza placed appellant under arrest.

Police Detective Garza further testified that appellant fit the description of one of the armed robbers that had been broadcast over the police radio; that he had concluded that appellant was one of the robbers; and, that appellant apparently tried to hide the money under the floor mat. Garza also testified that no one touched the exposed portion of the twenty dollar bill and the floor mat until they were photographed. After being photographed, the floor mat was overturned, revealing a $267.00 wad of money. Garza compared the serial numbers of the discovered money with a list of serial numbers of the stolen money provided by Gibraltar Savings and Loan and found five twenty dollar bills which matched.

Garza admitted that he did not have an arrest warrant in his possession when he arrested appellant but that he had been advised by the police dispatcher that a warrant had been issued. Garza stated that the arrest warrant was delivered to the scene of the arrest between three and five minutes after appellant was arrested. Garza also admitted that he did not have a search warrant for the second car but that he based his search on the circumstances of the matching description and appellant's apparent attempt to hide money underneath the floor mat.

 Police broadcasts, based on probable cause, reporting a felony and a description of the suspect, satisfy the requirements for a warrantless arrest under TEX.CODE CRIM.PROC.ANN. art. 14.04 (Vernon 1974); *Myre v. State,* 545 S.W.2d 820 (Tex. Cr.App.1977); *Guzman v. State,* 521 S.W.2d 267 (Tex.Cr.App.1975). The reported information, which had been broadcasted over the police radio, authorized Police Detective Garza to arrest the appellant. *Myre* at p.

826. Therefore, the arrest of appellant was lawful.

 The basic premise in any warrantless search and seizure is that they are per se illegal, except for a few specifically established and well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is also well established that, under certain circumstances, the police may seize evidence in plain view without a warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Appellant urges that the seizure of the cash from the back of the car cannot be justified under the "plain view" exception because the three criteria for the application of the "plain view" exception as set forth in *Coolidge* have not been met.

In the *Coolidge* plurality's view, the "plain view" doctrine permits the warrantless seizure by police of private possessions where three requirements are satisfied: (1) the police officer must lawfully make an "initial intrusion" or otherwise properly be in position from which he can view a particular area; (2) the police officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the "plain view" doctrine only as a pretext; and, (3) it must be "immediately apparent" to the police officer that the items he observes may be evidence of a crime, contraband or otherwise subject to seizure. Appellant urges that, only after Police Detective Garza's merely having seen the corner of a twenty dollar bill, the twenty dollar bill could not have been "immediately apparent" evidence of the crime; therefore, the above three requirements of *Coolidge* have not been met.

Since *Coolidge,* the United States Supreme Court has recently handed down the case of *Texas v. Brown,* —— U.S. ——, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), reversing *Brown v. State,* 617 S.W.2d 196 (Tex.Cr. App.1981), which modified the criteria in *Coolidge* for application of the "plain view" exception when the property in plain view is "situated on private premises to which access is not otherwise available for the seizing officer." As stated in *Texas v. Brown:*

> (The) "plain view" (exception) provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. * * *

Thus, police may perceive an object while executing a search warrant, or they may come across an item while acting pursuant to some exception to the warrant clause, (citations omitted). Alternatively, police may need no justification under the Fourth Amendment for their access to an item, such as when property is left in a public place, (citations omitted).

It is important to distinguish "plain view," as used in Coolidge to justify seizure of an object, from an officer's mere observation of any item left in plain view. Whereas the latter generally involves no Fourth Amendment search, (citations omitted), the former generally does implicate the Amendment's limitations upon seizures of personal property. The information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity. In turn, these levels of suspicion may, in some cases, (citations omitted), justify police conduct affording them access to a particular item. * * *

(The) "plain view" (exception) is perhaps better understood, therefore, not as an independent "exception" to the warrant clause, but simply as an extension of whatever the prior justification for an officer's "access to an object" may be.

The United States Supreme Court in *Texas v. Brown,* citing *Colorado v. Bannister,* 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1, (1981), and *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), reaffirmed the following rule, which is consistent with the Fourth Amendment, requiring probable cause for seizure in the ordinary "plain view" case:

[t]he seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. * * *

\* \* \* \* \* \*

As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," (citations omitted), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, non technical" probability that the incriminating evidence is involved is all that is required. (citations omitted). Moreover, our observations in *United States v. Cortez*, 449 U.S. 441 [411], 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is equally applicable to the probable cause requirement...

■■■ With the facts and circumstances of the instant case in mind, it is clear: (1) that Detective Garza's initial intrusion was lawful because he had sufficient probable cause for his warrantless arrest of appellant; (2) that the twenty dollar bill was discovered "inadvertently," which is to say, that Detective Garza may not have known in advance the location of the evidence and had intended to seize it, relying on the "plain view doctrine" only as a pretense; and (3) that Detective Garza had probable cause to associate the twenty dollar bill with criminal activity and, under *Texas v. Brown*, the "immediately apparent" requirement of *Coolidge* has been satisfied. Therefore, the requirements of *Coolidge* for the application of the "plain view doctrine" clearly were no bar to the instant case. Appellant's fifth ground of error is overruled.

In his last two grounds of error, appellant asserts that the trial court erred in denying appellant's motion to suppress his identification based on suggestive photographic line-ups in violation of his rights to due process of law under both the State and Federal Constitutions. Appellant argues that the pretrial photographic procedure was so suggestive as to give rise to a substantial likelihood of an irreparable misidentification.

■■■ During the course of the investigation, four witnesses, independent of each other, identified the appellant from a single photographic spread. The photographs were all police mugshots which reflected the date of arrest on tags that hung from the necks of the persons photographed. The tag on appellant reflected the date of the aggravated robbery offense which is the subject of this appeal; whereas, the tags on the others had different dates. Appellant apparently maintains that the identification was unnecessarily suggestive because of the date reflected on appellant's picture. The photo spread was shown to each of the four witnesses on the next day after the offense. All four witnesses independently identified appellant and were not told the name of the person whose picture they chose. All four witnesses were able to identify the appellant at both the pretrial hearing and trial. We hold that the photographic line-ups were not unnecessarily suggestive. In *Demouchette v. State*, 591 S.W.2d 488 (Tex.Cr. App.1979), the Court of Criminal Appeals ruled a similar photographic line-up not to be unnecessarily suggestive. In any event, there were independent identifications of appellant by all four witnesses at trial which were not based upon any of the photographic line-ups and which were clearly admissible. *Demouchette* at p. 491; *Turner v. State*, 614 S.W.2d 144 (Tex.Cr. App.1981). Appellant's sixth and seventh grounds of error are overruled.

The judgment of the trial court is AFFIRMED.