**James VOLANTY, Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas
Department of Corrections,
Respondent–Appellee.**

No. 86–2961.

United States Court of Appeals,
Fifth Circuit.

May 18, 1989.

Richard W. Rogers (court-appointed), Corpus Christi, Tex., for petitioner-appellant.

David B. Fannin, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, KING and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

James Volanty, an indigent, was convicted of aggravated robbery and was sen-

tenced to twenty years in prison by a Texas state jury. His conviction was affirmed on direct appeal.[1] Volanty filed a petition for discretionary review and a state habeas corpus petition, both of which were denied.

Having exhausted his state post-conviction remedies, Volanty brought the federal habeas petition before us now. Volanty alleged ineffective assistance of counsel in that his trial counsel failed to timely move for appointment of a psychiatric expert, and he alleged that he was denied due process in that he was entitled to a court-appointed psychiatrist. Volanty's trial counsel did in fact file a timely motion for a court-appointed psychiatrist, which was denied on its merits by the state court. Volanty's motion urged that a psychiatrist was necessary because he had a severe heroin addiction at the time of the offense and was temporarily insane due to intoxication from drug usage. Under section 8.04 of the Texas Penal Code, a jury may consider evidence of temporary insanity due to voluntary intoxication as a mitigating factor at the punishment phase.[2]

The Texas courts have, however, restrictively interpreted that statute, holding that "for a defendant to benefit from the provisions of § 8.04, he must do more than merely present evidence of intoxication or even gross intoxication." *Arnold v. State,* 742 S.W.2d 10, 14 (Tex.Cr.App.1987). Rather, he "must, as a result of intoxication (1) 'not know his conduct was wrong,' or (2) 'was incapable of conforming his conduct to the requirements of the law he violated.'" *Hart v. State,* 537 S.W.2d 21, 24 (Tex.Cr.App.1976) (quoting Tex.Penal Code § 8.01).[3]

Thus, the Texas statute provides a means for a defendant to draw the connection between his intoxication and his sanity —but it provides no additional assistance. The defendant must put on evidence not simply that he was intoxicated at the time of the offense but that he was insane as a result of the intoxication in order to receive a jury instruction on the law of voluntary intoxication as a mitigating factor.

To analyze Volanty's claim, we start with the Supreme Court's holding in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). In *Ake,* the defendant's bizarre behavior at his arraignment caused the trial court sua sponte to order a psychiatric examination. The psychiatrist found Ake to be incompetent to stand trial, and

---

**1.** *See Volanty v. State,* 663 S.W.2d 897, 898 (Tex. App.1983), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 790, 83 L.Ed.2d 784 (1985).

**2.** Tex.Penal Code Ann. § 8.04 (Vernon 1974) provides:

Section 8.04. Intoxication
(a) Voluntary intoxication does not constitute a defense to the commission of crime.
(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.
(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.
(d) For purposes of this section, "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.
At the time of Volanty's offense, the Texas Penal Code provided that the affirmative defense of insanity was available when the "actor ... either did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated." Tex.Penal Code Ann. § 8.01(a) (Vernon 1974).

**3.** *See also Still v. State,* 709 S.W.2d 658, 661 (Tex.Cr.App.1986) (although undisputed that defendant had consumed inordinate amount of intoxicating beverages, and defendant testified that "he got mad" and "lost his head" and appeared dazed and confused when police arrived, issue not raised); *Villarreal v. State,* 661 S.W.2d 329 (Tex.App.—Corpus Christi 1983) (defendant's testimony that he did not remember, he did not know what he felt, coupled with the fact of intoxication insufficient to raise issue); *Seek v. State,* 646 S.W.2d 557 (Tex.App.—Houston [1 Dist.] 1982) (defendant's inability to remember events of the crime insufficient to raise issue); *Madden v. State,* 628 S.W.2d 161 (Tex.App.1982) (evidence of defendant's consumption of Valium and six pack of malt beer together with his testimony that at the time of the crime he was in a "walking sleep" and could remember only part of what happened insufficient to raise issue); *Hart,* 537 S.W.2d at 23–4 (evidence that defendant was drunk and testimony that when drunk he often "doesn't know what he is doing," and he is "likely to do anything," insufficient to raise issue).

Ake was committed. Six weeks later, Ake was found to be competent, and it was determined that as long as he continued to receive the antipsychotic drug he had been prescribed, his condition would remain stable. *Id.* at 71, 105 S.Ct. at 1090. At pretrial conference, Ake's counsel informed the court that he would be raising an insanity defense and moved for the appointment of a psychiatrist. The trial court denied the motion. *Id.* at 72, 105 S.Ct. at 1090. At trial, Ake's only defense was insanity. Defense counsel called and questioned the psychiatrists who had examined Ake in the state hospital, but because none of them had examined Ake regarding his mental state at the time of the crime, none could testify on that point. *Id.* The jurors, following an instruction that Ake was to be presumed sane at the time of the offense unless he presented sufficient evidence to raise a reasonable doubt to the contrary, found Ake guilty.

No new evidence was presented at the sentencing phase, and the prosecutor relied on the testimony of the state psychiatrists regarding Ake's future dangerousness. Ake had no expert witnesses to rebut this testimony. *Id.* at 73, 105 S.Ct. at 1091. The jury sentenced him to death.

The Oklahoma courts affirmed Ake's conviction and sentence. On direct appeal, the United States Supreme Court reversed, agreeing with Ake's assertion that the state's failure to appoint a psychiatrist had resulted in the denial of a fair trial and therefore constituted a violation of the Due Process Clause of the fourteenth amendment.

The Court makes clear, however, that an indigent defendant is not entitled to a court-appointed psychiatrist whenever he seeks one:

When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need

for the assistance of a psychiatrist is readily apparent. It is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony; with such assistance, the defendant might have a reasonable chance of success. In such a circumstance, where the potential accuracy of the jury's determination is so dramatically enhanced, and where the interests of the individual and the State in an accurate proceeding are substantial, the State's interest in its fisc must yield.

*Id.* at 82–83, 105 S.Ct. at 1095–96 (footnote omitted). Thus, a defendant must make a sufficient showing of the fact that his sanity is truly at issue. However, because the facts in *Ake* make the issue of the defendant's sanity so clear, it is difficult to distill from that case a bright line test for determining what constitutes a sufficient showing. We have previously noted that difficulty and have attempted to define more clearly the *Ake* threshold showing:

*Ake* requires that the defendant, at a minimum, make allegations supported by a factual showing that the defendant's sanity is in fact at issue in the case.

*Volson v. Blackburn,* 794 F.2d 173, 176 (5th Cir.1986). In *Volson,* the defendant's attorney offered only conclusory allegations that the defendant had been unable to understand the difference between right and wrong at the time of the offense. This court found such a showing inadequate to invoke *Ake.*[4]

The Tenth Circuit has reached a similar conclusion about what constitutes a showing sufficient to reach the *Ake* threshold. *Cartwright v. Maynard,* 802 F.2d 1203, 1211 (10th Cir.1986), *rev'd on other grounds,* 822 F.2d 1477 (10th Cir.1987) (en banc), *affirmed* —— U.S. ——, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) ("In order for a defendant's mental state to become a substantial threshold issue, the showing must be clear and genuine, one that consti-

---

**4.** In *Pedrero v. Wainwright,* 590 F.2d 1383, 1391 (5th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979), a pre-*Ake* case, this court found that there had been an inadequate showing that the defendant's sanity would be "seriously in issue" (the pre-*Ake* standard). In *Pedrero,* the only showing was defense counsel's

allegation that defendant was a drug addict who had once been confined to a mental institution. The court emphasized that the sanity issue was raised only once—at arraignment—and that the defense offered no additional evidence on sanity at any other point in the trial. *Id.* at 1391–92.

tutes a 'close' question which may well be decided one way or the other. Our interpretation ... is consistent with ... [that] set forth in *Volson v. Blackburn....*"); *accord Davis v. Maynard,* 869 F.2d 1401 (10th Cir.1989).

The substance of Volanty's pretrial motion for appointment of a psychiatric expert at government expense was that "at the time of the alleged offense [he] was a severely addicted heroin addict with a $1,000 a day drug habit. As a result, at the time of the commission of the alleged offense [he] was temporarily insane due to intoxication from drug usage." No supporting evidence was attached to Volanty's motion, and none was presented at the pretrial hearing on the motion.[5] The state, however, did not file any written response to the motion.[6] The trial court denied Volanty's motion. The trial proceeded, and Volanty was found guilty.

At the punishment phase, Volanty presented three lay witnesses. First, Sergeant Johnny Oelschlegel of the Nueces County Sheriff's Department made clear that Volanty had been wearing a particular shirt when he was brought to the county jail. This was significant since Jesse Mendoza, a counselor for the Texas Department of Mental Health and Mental Retardation's Substance Abuse division, next testified that during an interview with Volanty at the jail he observed "track marks" on Volanty's arms which indicated intravenous heroin usage—as did the blood stains on the sleeves of the shirt Oelschlegel identified. Mendoza testified that, in his opinion, on the basis of those observations and the social history acquired from Volanty during the interview, Volanty was a heroin addict. On cross-examination, Mendoza testified that Volanty had told him that he was a heroin addict and that he used approximately $1,000 worth of heroin a day. Finally, Patrick Jennings, a registered nurse employed by the Nueces County Jail, testified that he had administered medi-

---

5. The entire discussion between the court and Volanty's counsel at the pretrial hearing on the motion was:

> Volanty's Counsel:
> Your Honor, in the Penal Code, the definition of that is used with regard to temporary insanity, refers to intoxication by introduction of any substance into the body. I would like to have a psychiatrist appointed so that we could develop that testimony that that's what the situation was with Mr. Volanty at the time of the alleged offense. I don't recall that there are any cases cited pursuant to those definitions, but that language is—so many words that is set out in the Penal Code.
> The Court:
> What section, Mr. Dailey?
> Volanty's Counsel:
> It's in the definitions, Your Honor.
> The Court:
> You're talking about the definition of intoxication, Section 8.04?
> Volanty's Counsel:
> Your Honor, I'm sorry. I don't have my copy of the Penal Code with me, and I don't have any reference to the exact section. What I did was, in the order that I prepared for the Court giving the proposed court-appointed expert guidance on the law, I quoted from the definitions out of the Penal Code there. First, as to insanity, and then as to intoxication.
> The Court:
> All right. Do you have any authority whatsoever?

> Volanty's Counsel:
> No, Your Honor, I don't have any case authority.
> The Court:
> All right. The Court is going to deny the Motion for Appointment of Psychiatric Expert to Assist on Temporary Insanity Issue.

6. Volanty's attorney who represented him on the armed robbery charge, testified in the Federal District Court:

> Q. Now, at the time of the hearing when Judge Bennett denied your motion for a psychiatric expert, you did mention the fact that Mr. Volanty had a heroin addiction, and was that disputed by the State?
> A. I don't think that was disputed by anybody.
> Q. In other words, it was not necessary to substantiate the fact that he was a heroin addict when you were asking for a doctor because the State was by its silence agreeing with you that that was a true statement of Mr. Volanty?
> A. Well, I would agree with that. I don't think anybody was disputing the fact that Mr. Volanty had a problem with heroin at that point.
> Q. And did you also have the impression that Judge Bennett knew that also?
> A. That was my impression.

There is no stipulation as to Volanty's addiction, however, and the record of the state proceedings lacks any other indication of the basis for counsel's impression.

cation to Volanty for discomforts of heroin withdrawal.

Apart from this testimony, Volanty introduced no evidence relevant to the question of his sanity. There is no evidence in the record of the pre-trial proceedings or of the trial itself that at the time of the commission of the crime, Volanty's behavior was erratic or that his heroin habit rendered him unable to distinguish right from wrong or conform his behavior to the requirements of the law. The testimony of eyewitnesses to the crime revealed no hint that Volanty's drug usage had rendered him temporarily insane. We acknowledge that the restrictive reading given by the Texas courts to section 8.04 of the Penal Code makes the testimony of a psychiatrist almost essential for a defendant to reap the benefit of that statute. We cannot conclude, however, that the failure of the trial court to provide Volanty with a psychiatrist *on the bare assertion of his addiction* resulted in the denial of a fair trial and a violation of his due process rights under the fourteenth amendment. Therefore, although Volanty amply demonstrated that he was an addict, at least by the conclusion of the presentation of the evidence at the sentencing phase,[7] we hold that the fact of his addiction alone is not enough to make his sanity a "significant factor" at trial and thereby to satisfy the *Ake* threshold.

Because we find that Volanty failed to make the threshold showing required by *Ake* and its progeny to show that his sanity would be a "significant factor" at trial, we affirm the district court's denial of relief.

AFFIRMED.

JOHN R. BROWN, Circuit Judge, dissenting.

I can find no fault with the principles elucidated in the Court's opinion. Indeed, accepting them, I think the record compels a finding that, in the Court's own words, to maintain the Texas Defense of "insanity"

from intoxication "the restrictive reading given by the Texas courts to § 8.04 *makes the testimony of a psychiatrist almost essential* for a defendant to reap the benefit" of the § 8.04 defense (emphasis added) 874 F.2d 243 at 247 (5th Cir.1989).

Moreover, the Court's opinion, 874 F.2d at 246–247 makes clear that at the punishment phase of the trial—the only time in which, by the very terms of § 8.04(b), the issue of "insanity" by reason of intoxication is available and relevant—the evidence was overwhelming concerning his heroin usage and addiction. Especially significant is the testimony of Mendoza, a knowledgeable state employee in the Texas Mental Health and Mental Retardation's Substance Abuse Division. He observed "track marks" with blood stains on Volanty's shirt sleeves. Based on this and the social history obtained from Volanty, Mendoza expressed the professional opinion that Volanty was a heroin addict.

If this evidence was insufficient to trigger the Texas restrictive requirements it was solely because Volanty did not have the assistance and testimony of a psychiatrist who could link the acknowledged addict status to Volanty's actions in the alleged crime. It was this essential assistance and testimony which the Texas trial court denied him. The missing link, the critical void, was psychiatric assistance and testimony. In no way could the absence or its decisive significance be made more significant.

In § 8.04 cases the Texas courts have dealt only with alcoholic intoxication. Whether the "intoxication" from heroin addiction is the same as alcoholic intoxication was a matter for expert, psychiatric testimony, not this court in its appellate role and, with deference, ignorance of the mechanics of addict intoxication.

Granted that in *Volson*, we have required a showing that the defendant's sani-

---

7. In *Messer v. Kemp*, 831 F.2d 946 (11th Cir. 1987) (en banc), the court, in assessing whether the petitioner had made a showing adequate to reach the *Ake* threshold, looked to the evidence before the trial court at the time the motion for the appointment of a psychiatrist was made. *Id.*

at 960. Although under this rule we should look only to such evidence as the trial judge had before him at the time of the hearing on the motion, we find that even if we look to the entire record, the outcome here is not changed.

ty is in fact an issue in the case, the only thing missing here to establish this requirement is the absence of psychiatric assistance and testimony. To obtain that, Volanty did not have to prove further that at the time of the alleged robbery he was staggering, wall-eyed on suffering from any other attribute of the world of people under the influence of heroin addiction.

As the court says, the psychiatrist was *essential* to make out intoxication under § 8.04 of the State. Due process under *Ake* will not tolerate the State's denial of anything so indispensable.

I therefore must dissent.