United States Court of Appeals,

Fifth Circuit.

No. 91-7196.

J.W. WILLIAMS, Petitioner-Appellant,

v.

James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent-Appellee.

May 4, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before KING and EMILIO M. GARZA, Circuit Judges, and HALL<sup>*</sup>*, District Judge.

KING, Circu Judge:

Petitioner, J.W. Williams, a prisoner currently serving a life sentence in the custody of the Texas Department of Criminal Justice, appeals from the district court's denial of his first federal habeas corpus petition. Williams raises one issue on appeal: whether the state court's refusal to appoint a psychiatrist to assist in the preparation of his insanity defense violated his constitutional right to due process. Because we conclude that it did not, we affirm.

I.

On December 23, 1982, Williams was indicted in Moore County, Texas, on an aggravated kidnapping charge arising from the abduction, rape, and attempted murder of an eighteen-year-old girl.[1] Williams pled not guilty. Prior to trial, Williams' appointed attorney notified the trial court that Williams intended to rely upon the insanity defense. The attorney also filed a written motion stating that he had reason to believe that Williams "may have been insane at the time the offense was committed" and requesting the appointment of a psychiatrist to examine Williams and to assist in the preparation of Williams' defense.

---

*District Judge of the Eastern District of Texas, sitting by designation.

[1]The same conduct also resulted in an attempted capital murder indictment and conviction in Sherman County, Texas. The attempted capital murder conviction was ultimately vacated by the Texas Court of Criminal Appeals on double jeopardy grounds.

Before ruling on the motion, the trial court conducted a hearing at which both Williams and the State were afforded the opportunity to present evidence.[2] At the hearing, Williams testified that he suffered from periodic hallucinations, flashbacks, and blackouts, which he attributed to his heavy use of LSD and other drugs after he returned from military service in Vietnam. Williams also recounted that, on one occasion, his parole officer told him that he had attacked his own father with a knife. He further testified that, while in federal prison in Texarkana, he saw a psychiatrist twice a week for "emotional problems" arising from "trouble" with his ex-wife and that he had never been convicted of a "violent" crime. On cross-examination, however, Williams acknowledged that he had not asserted insanity as a defense to any of his prior convictions[3] and that, at the time of the offense, he was enrolled as student in good standing at the University of Arkansas.

Williams also offered as evidence part of a written statement made by his co-defendant, William Gartrell, in which Gartrell stated that, although Williams initially "seemed to have a sound mind," on the night of the offense, Gartrell had "started realizing that J.W. Williams was far from sound mind, but instead as a fact, a homicidal maniac." The State countered with the testimony of Joe Trammell, a county jailer, who had observed Williams during the period after Williams' arrest and prior to the hearing. Trammell testified that he had seen nothing that would lead him to believe that Williams was insane or incompetent. After considering the evidence, the trial court denied Williams' request for the appointment of a psychiatrist and proceeded with the trial.

At trial, Williams' sole defense was that he was insane when he committed the offense. As part of its case in chief, the State offered a brief written statement made by Williams several days after he was arrested, in which he described, in general terms, what he and Gartrell had done on the night of the offense, and in which Williams assumed "full blame" and responsibility for the crime. Testifying

---

[2]On January 20, 1983, the trial court conducted a pretrial hearing to consider motions filed by Williams in the Sherman County prosecution, which included a motion for the appointment of a psychiatrist. At that time, the court heard evidence regarding Williams' request for psychiatric assistance in that case. On February 10, 1983, the court conducted a pretrial hearing in the Moore County prosecution, at which time, by agreement of the parties, the court took judicial notice of the evidence presented during the January 20 hearing.

[3]Williams previously had been convicted of forgery, two bank robberies, and escape.

on his own behalf, Williams stated that he suffered from some type of mental defect that caused him to experience periodic hallucinations and blackouts, that he could not remember the details of the offense for which he was charged, and that he did not recall making the written statement. Williams further testified that, while he was in the federal correctional institution at Texarkana, the blackouts had been diagnosed as arising from "post-traumatic stress syndrome" related to his service in Vietnam. On cross-examination, however, Williams admitted that he remembered abducting the girl at gun-point, driving her out of town, raping her, standing over her with the gun in his hand, and driving away from the scene of the crime.

Williams also called as witnesses, Gartrell, who testified that Williams was not in his right mind on the night of the offense, and a jail inmate, who testified that Williams had been experiencing blackouts while he was detained prior to trial. As rebuttal witnesses, the State called the county sheriff and the county judge. Both officials testified that Williams appeared coherent and competent in all respects when he was arraigned four days after the offense.

At the close of the evidence, the jury was instructed concerning the insanity defense. They returned a guilty verdict and sentenced Williams to life imprisonment. Williams appealed to the Texas Court of Appeals, which affirmed his conviction on August 16, 1984.[4] He did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

On February 29, 1988, Williams filed a state habeas petition, which was denied by the Texas Court of Criminal Appeals without written order. Williams thereafter filed this federal habeas corpus proceeding in the district court. His petition asserted two grounds for relief: (1) that the state court denied his right to due process and to the effective assistance of counsel by refusing to appoint a psychiatrist to assist in the preparation and presentation of his insanity defense, and (2) that the state court denied his right to due process by failing to submit requested jury instructions regarding evidence of criminal conduct extraneous to the charged offense.

The district court referred the matter to a magistrate, who recommended denying relief. The

---

[4]*Williams v. State,* No. 2-84-151-CR (Tex.App.—Fort Worth, Aug. 16, 1984, no pet.) (not designated for publication).

district court adopted the magistrate's recommendation and dismissed Williams' petition without conducting an evidentiary hearing. Williams timely appealed, and this court granted Williams' application for a certificate of probable cause.

## II.

On appeal, Williams challenges only the district court's conclusion that he was not denied due process or the effective assistance of counsel as a result of the state courts' refusal to appoint a psychiatrist.[5] Relying primarily upon *United States v. Edwards,*[6] Williams argues that he was denied the effective assistance of counsel because "he was denied any kind of psychiatric assistance although his trial counsel properly and timely requested such assistance." According to Williams, the state court denied his request, "even though there was ample evidence of [his] prior mental problems."

Although his reliance on *Edwards* is misplaced,[7] Williams' argument does find support in *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). There, the Supreme Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." 470 U.S. at 74, 105 S.Ct. at 1091-92. The State's failure to provide such assistance, the Court concluded, constitutes

---

[5]Although Williams asserted two grounds for relief in his habeas petition, neither his motion to proceed *in forma pauperis* on appeal nor his brief to this court addresses the evidentiary issue presented in the petition. By not briefing the issue, Williams has waived his right to raise it before this court. *See Volson v. Blackburn,* 794 F.2d 173, 175 (5th Cir.1986).

[6]488 F.2d 1154 (5th Cir.1974).

[7]*Edwards* involved an appeal from the judgment of a federal district court. The appellant argued that the trial court had erred in denying him the psychiatric assistance authorized by 18 U.S.C. § 3006A(e). 488 F.2d at 1160. This court found that the trial court had expressly granted the appellant's request and appointed an expert but that appellant's counsel had failed to pursue the matter when it became clear that the expert was reporting to the court rather than to the appellant. *Id.* at 1164. We concluded that appellant's counsel had not rendered "reasonably effective assistance" and remanded the action for a new trial. *Id.* at 1165. *Edwards* is therefore factually distinguishable from the instant case: Williams' claim does not arise under § 3006A(e) and he has not alleged that his attorney failed to pursue the appointment of a psychiatrist. Moreover, because *Edwards* is a pre-*Strickland* ineffectiveness case, it has only limited precedential value. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

a denial of due process.  *Id.* at 87, 105 S.Ct. at 1098.[8]

The Respondent concedes that, under *Ake,* an indigent defendant who makes the required threshold showing is entitled to the assistance of a court-appointed psychiatrist.  He contends, however, that Williams failed to make such a showing.[9]  Our task, therefore, is to determine whether Williams made a preliminary showing that his sanity was likely to be a significant factor at trial.  After a careful review of the record, we conclude that he did not.[10]

## A.

At the outset, we must consider the question of the quantum of proof necessary to make the preliminary showing required under *Ake.*  We have previously noted that, "because the facts in *Ake*

---

[8]The Court expressly stated that because the Due Process Clause guaranteed Ake the assistance he requested, it did not need to address the applicability of the Sixth Amendment.

[9]Although *Ake* was decided after Williams' conviction became final, the Respondent has not raised the issue of *Ake*'s retroactivity under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).  To date, only one circuit court has directly addressed this issue.  *See Bassette v. Thompson,* 915 F.2d 932, 938 (4th Cir.1990) ("*Ake* announces a new rule which is not to be applied retroactively."), *cert. denied,* --- U.S. ----, 111 S.Ct. 1639, 113 L.Ed.2d 734 (1991). The Ninth Circuit has held that a similar rule permitting collateral review of the competence of defense psychiatrists could not be applied retroactively under *Teague.  See Harris v. Vasquez,* 949 F.2d 1497, 1519 (9th Cir.1990), *cert. denied,* --- U.S. ----, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992).  In dissent, Judge Noonan argued that both *Ake* and the rule at issue fell within the fundamental fairness exception to the *Teague* rule.  *See id.* at 1529-39 (Noonan, J., concurring in part and dissenting in part).  We need not decide this issue, however, because the *Teague* rule is not "jurisdictional," in the sense that we must raise and decide the issue *sua sponte.  Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990).  We therefore leave the retroactivity question for another day and address the merits of Williams' *Ake* claim.

[10]In *Volanty v. Lynaugh,* 874 F.2d 243 (5th Cir.), *cert. denied,* 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989), we noted that, in evaluating an *Ake* claim, we should look only to the evidence before the trial judge at the time he ruled on the request for psychiatric assistance.  *Id.* at 247 n. 7 (citing *Messer v. Kemp,* 831 F.2d 946 (11th Cir.1987) (en banc), *cert. denied,* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 902 (1988)).  Such a rule clearly finds support in both the analysis and language of *Ake.*  Nevertheless, at least one circuit has employed a broader inquiry, at least in the case of pre-*Ake* convictions: "In cases such as this, in which the trial court denied a criminal defendant court-appointed psychiatric assistance prior to the Supreme Court's determination in *Ake,* but to which *Ake*'s standard applies, the question presented is whether, "upon review of the entire record, [petitioner] *could have* made a threshold showing under *Ake* "that his sanity at the time of the offense is to be a significant factor at trial ...." ' "  *Liles v. Saffle,* 945 F.2d 333, 336 (10th Cir.1991) (quoting *Cartwright v. Maynard,* 802 F.2d 1203, 1212 (10th Cir.1986)), *cert. denied,* --- U.S. ----, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992).  As was the case in *Volanty,* however, our resolution of this case does not depend upon which of these competing rules we chose to follow, for even if we look to the entire record, we do not find sufficient evidence to support Williams' *Ake* claim.  *See* 874 F.2d at 247 n. 7.

make the issue of the defendant's sanity so clear,[11] it is difficult to distill from that case a bright line test for determining what constitutes a sufficient showing." *Volanty v. Lynaugh,* 874 F.2d 243, 245 (5th Cir.), *cert. denied,* 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989). Indeed, the *Ake* Court specifically refused to express an opinion regarding this issue. *See* 470 U.S. at 86 n. 12, 105 S.Ct. at 1098 n. 12. Instead, the Court merely concluded that the record before it made it clear that the defendant's sanity was likely to be a significant factor in his defense, and that the trial court had notice of that fact when the request for a court-appointed psychiatrist was made. *Id.* at 86, 105 S.Ct. at 1098.

In *Volson v. Blackburn,* 794 F.2d 173 (5th Cir.1986), we attempted to define more clearly the *Ake* threshold requirement. There, we rejected the argument that a defendant's sanity will always be a significant factor at trial when the defendant pleads insanity and concluded that "*Ake* requires that the defendant, at a minimum, make allegations supported by a factual showing that the defendant's sanity is in fact at issue in the case." *Id.* at 176. Because Volson's attorney had merely alleged that his client was unable to understand the difference between right and wrong at the time of the offense, we found that Volson had failed to make the required threshold showing. *Id.*

We revisited the issue in *Volanty.* In that case, the defendant made a pretrial motion for the appointment of a psychiatrist which stated that the defendant was severely addicted to heroin and that, at the time of the commission of the offense, he was temporarily insane due to intoxication from drug use. 874 F.2d at 246. The defendant presented no evidence with the motion or at the pretrial hearing to substantiate his allegation; however, he did offer substantial testimony regarding the fact of his addiction during the sentencing phase of his trial. *Id.*

Following *Volson,* we concluded that Volanty's "bare assertion" that his heroin addiction rendered him temporarily insane at the time of the offense was not sufficient to invoke the protection afforded by *Ake. Id.* at 247. We observed that there was no evidence in the record "that at the time

---

[11]The record indicated that Ake's behavior at his arraignment was so bizarre that the trial court, sua sponte, had him examined for competency, that he was initially found to be incompetent and was later found to be competent only on the condition that he was sedated for trial, and that the psychiatrist who examined him informed the trial court that Ake's illness might have begun many years earlier. *See Ake,* 470 U.S. at 86, 105 S.Ct. at 1098.

of the commission of the crime, Volanty's behavior was erratic or that his heroin habit rendered him unable to distinguish right from wrong or conform his behavior to the requirements of the law." *Id.* Thus, "although Volanty amply demonstrated that he was an addict," at least by the close of the sentencing phase of the trial, we held that the fact of his addiction alone was not enough to make his sanity a significant factor at trial. *Id.*

Taken together, *Volson* and *Volanty* stand for the proposition that neither the bare assertion that the defendant was insane at the time of the offense, nor evidence of mental problems generally is sufficient to make the threshold showing required by *Ake.* Rather, the defendant, at a minimum, must make a factual showing—must present specific evidence—that his sanity at the time of the offense is truly at issue. *See id.* at 245; 794 F.2d at 176. Yet neither case fully informs our judgment regarding the quantum of proof necessary to make the required showing.

We find guidance, however, in *Pedrero v. Wainwright,* 590 F.2d 1383, 1391 (5th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979). In *Pedrero,* a pre-*Ake* decision, we acknowledged that a state trial court, in some cases, has a constitutional duty to provide psychiatric assistance to an indigent defendant, but we held that such a duty arises only in cases where the defendant's sanity "is seriously in issue"—where the trial court has "reasonable ground to doubt" the defendant's sanity at the time of the offense. *Id.* Today, we reaffirm this standard in the context of claims brought under *Ake.* We hold, therefore, that a defendant satisfies the threshold requirement of *Ake* only when he has made a factual showing sufficient to give the trial court reasonable ground to doubt his sanity at the time of the offense.

We note that the standard we adopt today is consonant with the standard employed by two other circuits to evaluate claims brought under *Ake.* The Eleventh Circuit has stated:

> [A] defendant must demonstrate something more than a mere possibility of assistance from the requested expert; due process does not require the government automatically to provide indigent defendants with expert assistance upon demand. Rather, a fair reading of these precedents is that a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.

*Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.) (en banc), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987) (footnotes omitted). The Eighth Circuit employs a virtually identical

standard. *See Little v. Armontrout,* 835 F.2d 1240, 1244 (8th Cir.1987) (en banc) ("[A] defendant must show more than a mere possibility of assistance from an expert. Rather, the defendant must demonstrate a reasonable probability that the requested expert would aid in his defense, and that the denial of expert assistance would result in an unfair trial."), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988).[12] We believe that a defendant who makes a factual showing sufficient to give the trial court reasonable ground to doubt his sanity at the time of the offense has demonstrated a "reasonable probability" both that the requested expert would be of assistance in the defense, and that the denial of such assistance would result in an unfair trial. We further note that such a standard provides adequate assurance that indigent defendants have access to "the raw materials integral to the building of an effective defense." *Ake,* 470 U.S. at 77, 105 S.Ct. at 1093.

B.

We next consider whether Williams presented sufficient specific evidence before the trial court to give that court reason to doubt his sanity at the time of the offense. At the pretrial hearing, Williams testified in general terms about periodic hallucinations, flashbacks, and blackouts, which he attributed to his heavy use of LSD and other drugs. He also testified that he had seen a psychiatrist while in federal prison for "emotional problems" and that he had once attacked his father with a knife. Williams failed, however, specifically to raise the issue of his mental state at the time of the offense.

---

[12]Other circuit courts have articulated varying standards for determining what constitutes a showing sufficient to reach the *Ake* threshold. The Tenth Circuit, for example, has stated that "[i]n order for a defendant's mental state to become a substantial threshold issue, the showing must be clear and genuine, one that constitutes a "close' question which may well be decided one way or another. It must be one that is fairly debatable or in doubt." *Cartwright v. Maynard,* 802 F.2d 1203, 1211 (10th Cir.1986), *rev'd on other grounds,* 822 F.2d 1477 (10th Cir.1987) (en banc), *affirmed,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *see also Liles v. Saffle,* 945 F.2d 333, 336 (10th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 956, 117 L.Ed.2d 123 (1992). We note, however, that while at least the first sentence of the Tenth Circuit's standard appears on its face to be quite stringent, it has been less harsh in application than one would imagine. *See Dunn v. Roberts,* 963 F.2d 308, 313 (10th Cir.1992) (upholding the district court's grant of a new trial on *Ake* grounds where the trial court was "made aware in general terms" of evidence bearing on the petitioner's battered woman's syndrome defense, and where the petitioner's counsel "explained clearly" that the State's case and the petitioner's defense rested on the element of specific intent and that the petitioner "could not develop an effective rebuttal" without the assistance of an expert). We further note that the *Ake* Court expressly acknowledged that one of the critical functions of a psychiatric expert is "to help determine whether the insanity defense is *viable*...." 470 U.S. at 82, 105 S.Ct. at 1096 (emphasis added).

Indeed, the only evidence offered by Williams at the pretrial hearing regarding this critical issue was Gartrell's "homicidal maniac" comment, which is easily dismissed. Moreover, the State's rebuttal evidence included the testimony of a third party who had observed Williams for an extended period of time shortly after the offense. The evidence adduced at the pretrial hearing, therefore, clearly was not sufficient to give the trial court reason to doubt Williams' sanity at the time of the offense.

At trial, Williams offered additional testimony about the blackouts he allegedly had been experiencing—that they had been diagnosed as arising from "post-traumatic stress syndrome" related to his service in Vietnam. He also testified that he could not remember committing the crime for which he was charged. Although he never expressly said so, the basis of his defense was apparently that he experienced such a blackout on the night of the offense. Thus, unlike the defendants in *Volson* and *Volanty,* Williams offered at least some testimony regarding his mental state at the time of the offense.

On cross-examination, however, Williams admitted that he remembered abducting the girl at gun-point, driving her out of town, raping her, standing over her with the gun in his hand, and driving away from the scene of the crime. Therefore, even if we credit Williams' testimony that he experienced periodic blackouts, due to "post-traumatic stress syndrome," his own testimony belies the conclusion that he was experiencing such an episode at the time the offense was committed. Consequently, although Williams did present some evidence during trial regarding his mental state at the time of the offense, we cannot say that the evidence presented was sufficient to give the trial court reason to doubt his sanity at that critical time.[13]

### III.

In sum, we conclude that Williams failed to make a factual showing sufficient to give the trial

---

[13]Williams argues that because the trial court submitted a jury instruction regarding the insanity defense, "it must be presumed that the court found the evidence supporting such charge to be competent." The Texas Penal Code requires a court to submit the charge whenever "evidence is admitted supporting the defense." TEX.PENAL CODE ANN. § 2.04(c) (Vernon 1974). Because Williams offered testimony regarding his insanity defense, the trial court correctly instructed the jury regarding the defense. It does not necessarily follow, however, that the evidence presented was sufficient to give the trial court reason to doubt Williams' sanity at the time of the offense. Indeed, we conclude that it was not.

court reason to doubt his sanity at the time of the offense. Thus, because Williams failed to make the preliminary showing required by *Ake,* the trial courts' refusal to appoint a psychiatrist to assist in the preparation of his insanity defense did not violate Williams' constitutional right to due process. We therefore AFFIRM the district court's denial of relief.