11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Ernest Dewayne Smith

Appellant

Vs.                   No.  11-02-00024-CR C Appeal from Harris County

State of Texas

Appellee

 

The jury
convicted Ernest Dewayne Smith of aggravated robbery and assessed his
punishment at 20 years confinement.  We
affirm.

There is
no challenge to the sufficiency of the evidence.  Yong Chan Kim testified through an interpreter that he owned a
beauty supply store where he and his wife worked.  Kim testified that on January 14, 2000, he, his wife, and his
one-year-old son were in the store getting ready to close when appellant
entered the store with a gun and said:  ADon=t move.  Where is the money?@  Kim
said that appellant pointed the gun at Kim=s head and demanded  money.  Appellant took the money from the cash
register and  from a cash box below the
register.  The Houston Police Department
was able to recover fingerprints from the cash register and the cash box.  The fingerprints recovered from the cash
register and the cash box matched appellant=s fingerprints.  Kim identified
appellant from a police lineup as the person who robbed his store. 

In his
first point of error, appellant argues that the appellate record is incomplete
because the court reporter did not record some of the bench conferences at
trial. The record indicates that the court reporter did record several bench
conferences at trial; however, appellant complains of seven bench conferences
that were not recorded. 








The first
four unrecorded bench conferences occurred during the guilt/innocence phase of
the trial.  The first unrecorded bench
conference occurred during the testimony of Officer James R. Schultea.  The State questioned Officer Schultea about
how he was assigned appellant=s case.  Appellant objected, and
the trial court overruled his objection. 
After the bench conference, Officer Schultea explained that, at the time
he was assigned the case, there was no suspect and that appellant later became
a suspect.  In the second unrecorded
bench conference, Officer Richard K. Perez had testified that he recovered
fingerprints from the scene, and the State offered Exhibit No. 3.  After the unrecorded bench conference, the
State requested to admit the exhibit and show the front of the exhibit to the
jury.  Appellant originally stated A[s]ubject to my objection about hearsay.@  
However, when the trial court informed appellant that only the front of
the exhibit would be shown to the jury, appellant stated that he had no
objection.  The next two unrecorded
bench conferences occurred during the testimony of Officer Walter L. Stairhime,
Jr.  The State asked Officer Stairhime
what information Exhibit Nos. 3, 4, and 5 contained.  Appellant objected, and a conference was held off the record. The
State later asked Officer Stairhime how he obtained appellant=s fingerprints. After a discussion off the
record, Officer Stairhime testified that he obtained appellant=s fingerprints on April 6, 2000. 

The next
three unrecorded bench conferences occurred during the punishment phase of the
trial.  The State questioned a Harris
County deputy sheriff assigned to the Probable Cause Court concerning Aanything unusual that was said by [appellant]
at that arraignment.@  Appellant objected, and a discussion was
held off the record.  Appellant=s objection was overruled, and the deputy
sheriff testified that appellant said:  A[H]ow can they pick me out of a line up when
I was wearing a mask?@  Later, a friend from appellant=s neighborhood stated that appellant sold Acrack@ for a living.  Appellant
objected, and a discussion was held off the record.  The trial court then sustained appellant=s objection and instructed the jury to
disregard the statement.  Finally, the
State questioned appellant=s sister about when appellant Afirst started getting in trouble with the law.@  The
State asked appellant=s
sister if she recalled appellant going to juvenile court.  Appellant objected; and, after a discussion
off the record, the trial court overruled his objection. Appellant=s sister then testified that she knew
appellant was on probation in 1996.








A court
reporter is required to make a full record of the proceedings unless excused by
agreement of the parties.   TEX.R.APP.P.
13.1(a);  Tanguma v. State, 47 S.W.3d
663, 667 (Tex.App. ‑ Corpus Christi 2001, pet=n ref=d).[1]  The record does not indicate that there was
an agreement by the parties not to record the bench conferences in
question.  The court reporter=s failure to record all the bench conferences
absent an agreement of the parties constitutes error.  Tanguma v. State, supra. 
We must now determine whether the error affected appellant=s substantial rights. TEX.R.APP.P. 44.2
(b);  Tanguma v. State, supra.  An error affects a substantial right when it
has a substantial and injurious effect or influence in determining the jury=s verdict. 
King v. State, 953 S.W.2d 266, 271 (Tex.Cr.App.1997).  

The record
shows that, after the second unrecorded bench conference, appellant stated that
he had no objection to admitting State=s Exhibit No. 3 and to showing the front of the exhibit to the
jury.  We, therefore, find that
appellant=s substantial rights were not affected by the
court reporter=s failure to record that bench conference as
appellant would not have preserved any argument in admitting the exhibit for
review on appeal.  See Tanguma v. State,
supra.  After the sixth unrecorded bench
conference, appellant=s
objection was sustained; and the jury was instructed to disregard the
testimony.  Again we find that any error
in not recording the conference was not harmful to appellant.  

The record
shows that on each of the remaining unrecorded bench conferences, appellant=s objections were overruled.  After the unrecorded bench conferences, the
State either clarified the question or moved on to another topic.  Appellant did not make any further objections.  After reviewing the testimony relating to
the remaining unrecorded bench conferences, we do not find that appellant=s substantial rights were affected by the
court reporter=s failure to record the bench
conferences.  Appellant=s first point of error is overruled.

In his
second point of error, appellant complains that the State engaged in
prosecutorial misconduct in making its opening statement.  During its opening statement, the State
said:

Mr. Kim,
however, had a man with a gun right at his head.  He saw his face.  He heard
his voice.  And he=ll come here today and tell you it=s that man, [appellant.] That day, January
14th of 2000, the Kims= lives
changed.  They sold their store because
they were afraid - -

 

The trial court sustained
appellant=s objection, instructed the jury to disregard
the statement, and denied appellant=s motion for a mistrial. 








We find
that the State=s argument was not so prejudicial as to deny
appellant a fair trial.  Manning v.
State, 864 S.W.2d 198, 204 (Tex.App. - Waco 1993, pet=n ref=d).  The court=s instruction to disregard the prosecutor=s comment was sufficient to remove any  prejudicial effect of the  opening statement from the minds of the
jurors.  Manning v. State, supra.  The trial court did not err in denying appellant=s motion for mistrial.  Appellant=s second point of error is overruled.

In his
third point of error, appellant argues that the State Aconducted a tirade and inflammatory jury
argument rather than voir dire@ and violated his right to due process under the United States and
Texas Constitutions.   Appellant
specifically complains of the State=s comment during voir dire:

Please be
very careful to not say that you can=t be fair on a case, can=t afford him his constitutional rights and extend him the full range of
punishment under the law because you don=t want to be a juror.  I need
good law-abiding citizens who have jobs and have commitments and have things
going on in their lives on that jury panel. 
You=re the kind of people who have
responsibilities and aren=t afraid to take on the responsibility.  You=re the
kind of people who are tired of crime and want to do something about it.  You=re the kind of people I need. 

 

Appellant=s objection to the voir dire was
sustained.  Appellant did not request an
instruction for the jury panel to disregard the comment or move for a
mistrial.  When appellant has been given
all the relief he requested at trial, there is nothing to complain of on
appeal.   Cook v. State, 858 S.W.2d 467,
473 (Tex.Cr.App.1993).    Appellant must
obtain an adverse ruling in order to preserve a matter for review.  Cook v. State, supra.  

Moreover,
statements made by counsel generally will not constitute reversible error
unless, in light of the record as a whole, the statements are extreme or
manifestly improper, violative of a mandatory statute, or inject new facts
harmful to the accused into the proceedings. 
Norton v. State, 930 S.W.2d 101, 103-04 (Tex.App. - Amarillo 1996, pet=n ref=d).  In voir dire examinations,
great latitude should be allowed so that counsel for both the State and the
defense have a good and sufficient opportunity to assess the relative
desirability of the members of the venire. 
Norton v. State, supra.  We find
that the State=s comment was neither extreme nor manifestly
improper.  Appellant=s third point of error is overruled.








In his
fourth point of error, appellant contends that the trial court erred in denying
his motion for mistrial after the State engaged in an improper line of
questioning.  On cross-examination,
during the guilt/innocence phase of the trial, appellant testified that he had
previously had long hair with braids but that he had cut it after the day of
the offense.    The State asked
appellant why he wanted the jury to know that he had not cut his hair prior to
January 14.   Appellant=s objection to the form of the question was
sustained.  The State then asked
appellant:  AWhy is it that you want the jury to know that
you had cornrows on the 14th?@Appellant responded that he wanted to Alet them know that [he had] been in the store several times.@  The
State then asked:  AIs that something you talked about with your
defense attorney?@
Appellant=s objection was sustained, and the trial
court instructed the jury to disregard the statement.  Appellant  argues that the
State=s line of questioning constituted an invasion
of the privileged communications between attorney and client.

A mistrial
is a device used to halt trial proceedings when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile.  Ladd v. State, 3 S.W.3d 547, 567
(Tex.Cr.App.1999), cert. den=d, 529 U.S. 1070 (2000).  The
asking of an improper question will seldom call for a mistrial because, in most
cases, any harm can be cured by an instruction to disregard.  Ladd v. State, supra.  A mistrial is required only when the
improper question is clearly prejudicial to the defendant and is of such
character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors. 
Ladd v. State, supra.  A trial
court=s denial of a mistrial is reviewed under an
abuse of discretion standard.  Ladd v.
State, supra;  State v. Gonzalez, 855
S.W.2d 692, 696 (Tex.Cr.App.1993).  We
find that the State=s
question was not so inflammatory that it could not be cured by an instruction
to disregard.  The trial court did not
abuse its discretion in denying appellant=s motion for mistrial. 
Appellant=s fourth point of error is overruled.








In his
fifth and sixth points of error, appellant complains that the State made an
improper jury argument during both the guilt/innocence and punishment phases of
the trial.  During the guilt/innocence
phase of the trial, the State argued about the victims= fear of appellant both during the robbery
and at trial.  The State then said that Athe best thing that you can do is you can
take [appellant] off the streets.  You
can protect the [victims] that way.  You
can protect the rest of us that - -.@  Appellant=s objection was overruled.  The State went on to argue about making the
victims feel safe.  Appellant=s objection was again overruled.  The State continued by saying that an
important consideration for the jury was Athe safety of the [victims] and the safety of the rest of us....It=s about all of our safety.@ 
Appellant=s objection was again overruled; and the
trial court stated:  AThis is a plea for law enforcement.  This is argument.@  We
agree with the trial court that the State=s argument was a proper plea for law enforcement.  See Wesbrook v. State, 29 S.W.3d 103
(Tex.Cr.App.2000), cert. den=d, 532 U.S. 944 (2001); Torres v. State, 92 S.W.3d 911 (Tex.App. -
Houston [14th Dist.] 2002, no pet=n).  

At the
punishment phase of the trial, the State argued:

This is a young man who since the time that
he was 15 or 16 years old, according to his own sister, he has committed crimes
of theft, criminal trespass as a juvenile.... After that probation - - or
during that same probation he violated the probation.  He didn=t meet
the terms that the Judge ordered him to comply with.  So he was put into jail, state jail.  He did eight months on that case.  But the only time that [appellant] has ever stayed out of trouble
in his life prior to the time he was 15 years old was that 8 months while he
was in jail.  Because by the time  - -

 

Appellant=s objection that the argument was a
misstatement of the evidence was overruled. 
During the punishment phase of the trial, appellant=s sister testified about appellant=s previous offenses, convictions, and jail
time.  The prosecution is afforded a
wide degree of latitude in drawing reasonable deductions from the evidence so
long as the inferences drawn are reasonable, fair, legitimate, and offered in
good faith.   Gaddis v. State, 753
S.W.2d 396, 398 (Tex.Cr.App.1988).  We
find that the State=s
argument was a reasonable deduction from the evidence presented during the
punishment phase of the trial.  Coble v.
State, 871 S.W.2d 192 (Tex.Cr.App.1993), cert. den=d, 513 U.S. 829 (1994). 
Appellant=s fifth and sixth points of error are
overruled.

In his
seventh point of error, appellant argues that the trial court erred in
overruling his motion to suppress the 
in-court identification of him because it was the product of an
impermissibly suggestive pretrial identification.  In determining  the
admissibility of an in‑court identification, we engage in a two-step
analysis:  (1) was the out‑of‑court
identification procedure impermissibly suggestive; and (2) did that suggestive
procedure give rise to a very substantial likelihood of irreparable
misidentification.  Barley v. State, 906
S.W.2d 27, 32-33 (Tex.Cr.App.1995). 
This analysis requires an examination of the Atotality of the circumstances@ surrounding the particular case and a
determination of the reliability of the identification.  Barley v. State, supra.








Officer
Schultea testified at the hearing on appellant=s motion to suppress that appellant was a suspect in the robbery of the
beauty supply store and that, after interviewing appellant, he asked  appellant to participate in a lineup.  Appellant agreed, and Officer Schultea
selected four other individuals to participate in the lineup who had the same
general appearance as appellant. 
Officer Schultea allowed appellant to choose the order in which he appeared
in the lineup, and appellant chose the third position.  The victim viewed the lineup live, and the
lineup was videotaped.  Officer Schultea
testified that no one suggested to the victim that the person who committed the
offense might be in the lineup.  The
victim identified appellant from the lineup as the person who committed the
offense based upon Ahis
mannerisms and body shape and what he saw of his face.@  Each
participant in the lineup was asked to say: 
ADon=t move.  Where=s the money?@  Officer Schultea stated that,
when the victim heard appellant=s voice, he was positive in his identification of appellant.

The victim
testified at the hearing through an interpreter that, during the robbery, the
intruder had a hood on his head and a shirt pulled up over his chin.  The victim could see the intruder=s forehead, eyes, and nose.  The victim stated that the police called him
to come view a lineup.  The victim
stated that he recognized the person who robbed his store in the lineup.  The victim testified that no one suggested
to him which participant in the lineup committed the offense.  The victim said that, during the lineup, he
recognized appellant=s
voice when appellant spoke the phrase:  ADon=t move.  Where=s the money?@ 

The victim
identified appellant at the hearing as the person who robbed his store.  The State asked the victim if he remembered
appellant from the robbery, and the victim responded:  AYes.@  When asked if he would have
recognized him regardless of the lineup, the victim responded:  AI=m not sure at this point.@  On
cross-examination, the victim said that he knew the police had caught the
suspect who they believed had robbed the victim=s store.

The trial
court asked the victim some questions for clarification.  The trial court asked the victim if he was
identifying appellant because of the lineup or because the victim
remembered  appellant from the
robbery.  The victim responded:  ABecause he=s the
one who robbed me.@  The trial court asked the victim if he could
have identified appellant in court if the victim had not viewed the
lineup.  The victim responded:  ABecause I try so hard to forget about him maybe.@  The
victim also said that he identified appellant based upon both the lineup and
his memory from the robbery.

Appellant
specifically argues that the pretrial lineup was impermissibly suggestive
because: (1) he was the only one in the lineup wearing all white clothing; (2)
he was the heaviest person in the lineup, had the most muscular build, and had
the darkest complexion; (3) the victim admitted he told the police he could not
identify the assailant=s
face; (4) the victim admitted that he knew the police had a suspect they
believed committed the offense; and (5) the victim admitted he identified
appellant at trial because he remembered appellant from the lineup. 








The record
shows that each participant in the lineup was dressed in civilian clothes.  Appellant was wearing all white clothing,
and another participant was wearing all black clothing.  The record shows that appellant was 20 years
old, was six-foot one-inch tall, and weighed 180 pounds.  The other participants were age 20, 21, 22,
and 31.  Two of the other participants
weighed 165 pounds and two weighed 170 pounds. 
Two of the other participants were also six feet one inch, one participant
was six foot, and the other was five feet eleven inches.  The Court of Criminal Appeals has stated
that Asuggestiveness@ may be created by the manner in which the pretrial identification
procedure is conducted.   Ibarra v.
State, 11 S.W.3d 189, 196 (Tex.Cr.App.1999), cert. den=d, 531 U.S. 828 (2000).  However,
neither due process nor common sense requires that the physical characteristics
of the participants in a lineup be identical.  
Buxton v. State, 699 S.W.2d 212, 216 (Tex.Cr.App.1985), cert. den=d, 476 U.S. 1189 (1986).  In  Buxton, the court found that there
was no suggestive procedure constituting a violation of due process, even
though the men in the lineup ranged in height from five feet nine inches to six
feet two inches, in weight from 175 pounds to 210 pounds, had various skin
tones, and wore different types of clothing. 

The trial
court found that the lineup was not unnecessarily suggestive.  The trial court noted in regard to the
in-court identification that Athere=s obviously much difficulty obtaining answers
from [the victim] because of the language difficulty and the interpreter.@  The
trial court also noted that the victim stated on Aat least two or three occasions during questioning that he was making
the identification based on his memory of the robbery.@  We
agree with the trial court that the lineup was not impermissibly
suggestive.  The trial court did not err
in denying appellant=s
motion to suppress the in-court identification.  Appellant=s seventh point of error is overruled.

In his
eighth point of error, appellant contends that the trial court erred in
allowing evidence of his post-arrest silence. 
During the direct examination of Officer Schultea, the State asked what
occurred after the lineup.  The State
then asked if Officer Schultea did anything else in his investigation.  Officer Schultea responded that he had an
opportunity to interview appellant again. 
The State asked about that interview, and Officer Schultea responded
that appellant Achose not to speak.@ 
Appellant=s objection was sustained, and appellant did
not request an instruction to disregard or move for a mistrial.








The
general rule is that, to preserve error, the defendant must object until
receiving an adverse ruling.  See Harris
v. State, 784 S.W.2d 5 (Tex.Cr.App.1989), cert. den=d, 494 U.S. 1090 (1990).  Error
in admitting improper evidence may be generally corrected by a withdrawal and
an instruction to disregard except in extreme cases where it appears that the
evidence is clearly calculated to inflame the minds of the jury and is of such
character as to suggest the impossibility of withdrawing the impression
produced on their minds.  Waldo v.
State, 746 S.W.2d 750 (Tex.Cr.App.1988). Because there was only one isolated
reference to appellant=s post‑arrest
silence,  any harm could have been cured
by an instruction to disregard; and the failure to object and to ask for an
instruction waived error.  Juhasz v.
State, 827 S.W.2d 397, 405 (Tex.App. - Corpus Christi 1992, pet=n ref=d).  Appellant=s eighth point of error is overruled.  

The
judgment of the trial court is affirmed.

 

W. G.
ARNOT, III

CHIEF
JUSTICE                                                                                         

June 26, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











[1]We note that in Polasek v. State, 16 S.W.3d 82, 89
(Tex.App. - Houston [1st Dist.] 2000, pet=n
ref=d), the court held that TEX.R.APP.P 13.1 is void
because it is Aan enlargement of a defendant=s substantive rights, in violation of the mandate that
rules not modify the substantive rights of the litigants.@  The court also
held that Rule 13.1 impermissibly conflicts with TEX.  GOV=T  CODE ANN. ' 52.046(a) (Vernon 1998) which provides  that the court reporter shall attend all
sessions of court and take notes upon request. 
Polasek v. State, supra.  We
decline to follow Section 3 of the Polasek opinion.