NO. 07-09-0259-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 7, 2010
                                       ______________________________

BETTY A. RIOS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE COUNTY COURT AT LAW NO. ONE OF LUBBOCK COUNTY;

NO. 2007-446,768; HONORABLE RUSTY LADD, JUDGE
_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.
ORDER OF ABATEMENT AND REMAND
          Appellant, Betty A. Rios, filed a notice of appeal from her conviction for driving while
intoxicated and sentence of three days incarceration and $2,000 fine. The sentence was
suspended and appellant was placed on community supervision for a period of 12 months. 
The appellate court clerk received and filed the trial court clerk’s record on September 22,
2009. The trial court reporter’s record was received and filed on October 27, 2009. Thus,
appellant’s brief was due on or before November 26, 2009. 
          On December 8, 2009, this Court notified appellant that her brief was past due and
that, if her brief was not filed by December 18, 2009, her appeal would be abated and
remanded to the trial court. As of the date of this order, appellant has failed to file her
brief. 
          Accordingly, we now abate this appeal and remand the cause to the trial court. See
Tex. R. App. P. 38.8(b)(2). Upon remand, the judge of the trial court is directed to
immediately cause notice to be given of and to conduct a hearing to determine: (1) whether
appellant desires to prosecute this appeal; (2) if appellant desires to prosecute this appeal,
whether appellant is indigent and, if not indigent, whether counsel for appellant has
abandoned the appeal; (3) if appellant desires to prosecute this appeal, whether
appellant’s present counsel should be replaced; and (4) what orders, if any, should be
entered to assure the filing of appropriate notices and documentation to dismiss appellant’s
appeal if appellant does not desire to prosecute this appeal or, if appellant desires to
prosecute this appeal, to assure that the appeal will be diligently pursued. If the trial court
determines that the present attorney for appellant should be replaced, the court should
cause the Clerk of this Court to be furnished the name, address, and State Bar of Texas
identification number of the newly-appointed or newly-retained attorney. 
          The trial court is directed to: (1) conduct any necessary hearings; (2) make and file
appropriate findings of fact, conclusions of law, and recommendations and cause them to
be included in a supplemental clerk’s record; (3) cause the hearing proceedings to be
transcribed and included in a supplemental reporter’s record; (4) have a record of the
proceedings made to the extent any of the proceedings are not included in the
supplemental clerk’s record or the supplemental reporter’s record; and (5) cause the
records of the proceedings to be sent to this Court. See Tex. R. App. P. 38.8(b)(3). In the
absence of a request for extension of time from the trial court, the supplemental clerk’s
record, supplemental reporter’s record, and any additional proceeding records, including
any orders, findings, conclusions, and recommendations, are to be sent so as to be
received by the Clerk of this Court not later than February 8, 2010.  
 
                                                                           Per Curiam
Do not publish.

recliner with a glass of tea. Sarah left her house about 9:00 p.m. to visit her parents, who
lived across the street. While she was there, Josh Price showed up and the pair started
back to Sarah's house. As they did so, they met William and his girlfriend, Jamie Balk, and
the group continued toward Sarah's house. As they approached the house, appellant
closed and locked the front door and Sarah heard a thump on the floor.

 Sarah also testified appellant had called her the day before the occurrence and said
he wanted to shoot Pettitt but he did not know why. The night before the incident, she
said, appellant came over to her house and showed Pettitt a gun which Pettitt looked at
and returned to appellant. She also said that at that time, the two shook hands and agreed
to be friends.

 William testified that on March 13, Pettitt had returned home from work tired, sat
down with a glass of iced tea, and was watching television. William left to pick up his
girlfriend and when they returned, appellant and Pettitt were sitting down. Pettitt was
watching television and appellant was talking to him. William and his girlfriend went over
to Sarah's parent's house to get Josh. The pair met Sarah and Josh and they returned to
Sarah's house. As they got to the front door, "it shut and locked." He heard someone
saying "Al, don't. Al, stop." William and Jamie went to the back door and as they entered,
they saw Pettitt lying on the floor bleeding. William also testified that appellant was at a
party at Sarah's house about a week or so before the stabbing incident, and Pettitt and
appellant threatened to go outside and throw knives at each other.

 Meador testified that about 1:30 a.m. on March 15, 2002, appellant called his
residence and wanted the sheriff to meet with him at an Alsup's store in Matador. When
the sheriff arrived at the store, appellant told the sheriff he wanted to talk. The sheriff
again recited Miranda rights to appellant. Appellant then told Meador that he had "killed
Al." He said he had gone over to Sarah's house to deliver the ribbons. When he arrived,
Pettitt was there, seated in a recliner chair, and told appellant to place the ribbons on a
table adjacent to the chair. Appellant then took out his knife and showed it to Pettitt. Pettitt
handed the knife back to him and he stabbed Pettitt. He then took Pettitt's knife and cut
himself. Appellant did not mention to Meador any aggression on the part of Pettitt that
might have provoked his attack.

 Meador then called Foster, who took a written statement from appellant that was
received into evidence. The written statement was much the same as appellant's oral
statement to the sheriff.

Factual Sufficiency

 In the recent case of Zuliani v. State, 97 S.W.3d 589 (Tex. Crim. App. 2003), the
court had occasion to explicate the standard by which we review the factual sufficiency of
the jury's rejection of a self-defense assertion. In explication of that standard, the court
explained:

 . . . the reviewing court reviews all the evidence in a neutral light and asks
whether the State's evidence taken alone is too weak to support the finding
and whether the proof of guilt, although adequate if taken alone, is against
the great weight and preponderance of the evidence. 

 

Id. at 595.

 In the light of that instruction, we have carefully examined all the evidence in this
case and have concluded that it is sufficient to sustain the jury's verdict. This is particularly
true in view of appellant's various inconsistent and incriminating statements, and all of the
surrounding circumstances and testimony we have listed above. Accordingly, appellant's
first issue must be, and is hereby, overruled.

 As we have noted, in his remaining four issues, appellant contends that the refusal
of the trial court to appoint him an expert on confessions deprived him of various
constitutional and statutory rights, as well as the effective assistance of counsel. In
reviewing that denial, we must determine if the trial court abused its discretion in refusing
appellant's request. Griffith v. State, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998), cert.
denied, 528 U.S. 826, 120 S.Ct. 77, 145 L.Ed.2d 65 (1999). 

 The seminal case in the area of the necessity for appointment of experts for an
indigent defendant is Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct.1087, 84 L.Ed.2d 53 (1985). 
In Ake, the defendant sought the appointment of a psychiatrist to assist on the issue of the
defendant's sanity at the time of the offense. In considering the defendant's request, the
Ake Court explained that due process requires access to raw materials integral to the
building of an effective defense. Even so, it went on to say that a state need not "purchase
for the indigent defendant all the assistance that his wealthier counterpart might buy," but
rather must provide him the basic tools to present his defense within our adversary system.
Id. 470 U.S. 77, 105 S.Ct. 1093. To decide whether the appointment of a particular expert
is a "basic tool" within the purview of the Ake instruction in a given case, a reviewing court
must consider three factors. Id.; Norton v. State, 930 S.W.2d 101, 105 (Tex. App.-Amarillo
1996, pet. ref'd). Those factors are: 1) the private interest that would be affected by the
action of the State; 2) the governmental interest that will be affected if the safeguard is to
be provided; and 3) the probable value of the additional or substitute procedural
safeguards that are sought and the risk of an erroneous deprivation of the affected interest
if those safeguards are not provided. Ake, 470 U.S. at 77, 105 S.Ct. 1093; Norton, 930
S.W.2d at 105. Moreover, the reviewing court must bear in mind that the government is
only required to provide indigent defendants with expert assistance in cases in which the
defendant has made a sufficient threshold showing. To be sufficient, that threshold
showing must establish that not only does there exist a reasonable probability that an
expert would be of assistance, but also that the denial of the requested expert assistance
would result in a fundamentally unfair trial. Norton, 930 S.W.2d at 106-07.

 In this case, the defense was given money for both a crime scene expert and a
psychiatrist. The psychiatrist was called to testify for appellant. In his written motion,
appellant claimed he needed the confession expert because of appellant's background,
his health disorders, and mental illness. However, he did not support these allegations by
pertinent evidence. 

 This record does not show that the trial court's refusal to appoint the requested
confession specialist resulted in a fundamentally unfair trial. This is particularly true in view
of the trial court's appointment of a psychiatrist and a crime scene expert. Thus, the trial
court did not abuse its discretion in refusing to appoint a confession expert. That being so,
its refusal to do so did not deprive appellant of any of his constitutional or statutory rights,
nor did it deprive him of the effective assistance of counsel. Appellant's second through
fifth issues are overruled.

 In summary, all of appellant's issues are overruled and the judgment of the trial
court is affirmed.

 John T. Boyd

 Senior Justice

Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. 75.002(a)(1) (Vernon Supp. 2004).