**Opinion filed August 29, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00073-CR
_____

## CHRISTOPHER GALINDO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 24325A**

## M E M O R A N D U M   O P I N I O N

Christopher Galindo appeals his jury convictions for three counts of injury to a child. *See* TEX. PENAL CODE ANN. § 22.04 (West Supp. 2013). On the first count of second-degree injury to a child, the jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty years and a $10,000 fine. For each of the two

remaining counts of third-degree injury to a child, the jury assessed Appellant's punishment at ten years confinement and a $10,000 fine. In three issues on appeal, Appellant argues that the trial court erred when it (1) denied his requests for the appointment of a defense expert, (2) admitted digitally enhanced photographs, and (3) allowed testimony regarding the child victim's neurological damage. We affirm.

*Background Facts*

Appellant was charged by indictment with three counts of injury to a child. The first count alleged that, on or about September 2, 2010, Appellant intentionally and knowingly caused serious bodily injury to G.B., a child fourteen years of age or younger, by causing G.B.'s head to strike an unknown object. The second count alleged that, on or about September 2, 2010, Appellant intentionally and knowingly caused serious bodily injury to G.B. by holding G.B.'s foot under hot water. The third count alleged that, on or about September 2, 2010, Appellant intentionally and knowingly caused bodily injury to G.B. by bruising G.B.'s genitals with his hand.

When the trial court subsequently submitted the three counts in the court's charge to the jury, it added the less culpable mental state of reckless conduct to Count One. Additionally, the trial court announced to the parties that, based upon the evidence offered at trial, it would submit the second count in the court's charge on the lesser included offense of causing bodily injury rather than serious bodily injury. The jury convicted Appellant of recklessly causing serious bodily injury on Count One and of intentionally or knowingly causing bodily injury on Counts Two and Three.

Abilene Police Officer Eric Vickers testified that, on September 2, 2010, he was dispatched to a residence on Arnold Street in Abilene, Texas, to investigate a reported injury to a child. Officer Vickers noted that the child had purportedly

fallen but that the APD's policy is to perform a general inquiry when it is informed that a child has been injured. When Officer Vickers arrived at the scene, G.B. was being transported by ambulance to the local hospital. Officer Vickers encountered Appellant, the fiancé of G.B.'s mother, at the residence.

Appellant told Officer Vickers that G.B. had fallen down the steps in front of the family's trailer house and that he had found G.B. unconscious and not breathing. Officer Vickers doubted Appellant's explanation because G.B. showed signs of a very severe head injury that was unlikely to have been caused by falling down a few steps. Officer Vickers also found Appellant's reaction to the situation a bit alarming given that Appellant was in no rush to check on G.B.'s condition. Based on Appellant's behavior, Officer Vickers asked his sergeant to send detectives to the scene for further investigation.

Suzie Butz, a sexual assault nurse examiner (SANE), testified that she photographed G.B.'s injuries on September 2, 2010, at Hendrick Medical Center. Butz stated that she applied "SDFI" technology to some of the photographs. SDFI stands for "Secure Digital Forensic Imaging." She explained that SDFI is a computer program that applies a negative inverse filter to a photograph in order to highlight "different patterns of injury." Butz noted that the SDFI images of G.B.'s injuries made his bruises more vivid and that they were not true and accurate depictions of how G.B. actually looked to the naked eye when the original photographs were taken. Butz stated that her examination of G.B. showed that the child was bruised all over his body, including his head, penis, arms, and stomach. Butz also noted that G.B. had a burn on his right foot that she believed to be a second-degree burn.

Henry Higgins, M.D. testified that he treated G.B.'s head trauma at the trauma center of Hendrick Medical Center. Dr. Higgins stated that G.B. was in critical condition and in a deep coma when he first saw the child. Upon examining

3

G.B.'s body, Dr. Higgins found bruises that appeared to have occurred over several different time periods and a burn on G.B.'s foot. Based on G.B.'s injuries, Dr. Higgins believed that G.B. had been abused.

Talmadge Trammell, M.D. testified that he performed emergency neurological surgery on G.B. at Hendrick Medical Center prior to G.B.'s transfer to Cook Children's Hospital. Dr. Trammell explained that he made an incision in G.B.'s scalp and removed a section of G.B.'s skull in order to allow G.B.'s brain to swell.

Randi Weaver, a nurse at Cook Children's Hospital, testified that she assisted G.B. with his recovery from his injuries. She testified that G.B.'s left side was intensely weaker than his right side and that he was unable to move his left arm or leg. Weaver believed that G.B. would always have a problem manipulating the left side of his body due to his injuries.

Appellant testified on his own behalf during the guilt/innocence phase. He testified that he was at home with G.B. on September 2, 2010, getting ready to leave to pick up G.B.'s sister from her school bus stop. Appellant stated that he was attempting to put shoes on G.B. but G.B. was being "fussy." Appellant then put his hand on G.B. and pushed him. G.B.'s head struck a coffee table, and he lost consciousness. Appellant claimed that he only pushed G.B. in order to make G.B. sit down and that he did not intend for G.B.'s head to hit the table. Appellant testified that he initially told the police that G.B. had fallen down the stairs because he knew that his behavior had been reckless. Appellant noted that he has an anger problem, and he admitted hitting G.B. on multiple occasions.

Appellant also testified that, a few days before G.B. hit his head, Appellant accidently burned G.B.'s foot while giving him a bath. Appellant was attempting to wash G.B.'s hair, but G.B. was not cooperating. In order to get the soap out of G.B.'s hair, Appellant held G.B.'s leg down in the bathtub. Appellant's action

4

forced G.B.'s leg under the hot water faucet, and Appellant did not immediately realize that the water was burning G.B.'s foot. Appellant noted that he initially lied to the police about how G.B. had sustained the burn because he was afraid that he would have been arrested immediately if he had told the truth.

Appellant also admitted that he intentionally pinched G.B.'s genitals a day before G.B. sustained his head injury. Appellant stated that he pinched G.B. for being "fussy." Appellant testified that he consciously and intentionally pinched G.B.'s genitals despite the fact that he knew that his action would hurt the child.

*Analysis*

In his second issue, Appellant asserts that the trial court erred in denying his requests for the appointment of an expert in SDFI to assist with the preparation and presentation of the defense. According to the literature, SDFI-TeleMedicine LLC is a company that has developed a "Negative Invert Filter" computer software program that inverts or converts the color of each pixel in a digital photograph to create a "tonal inversion of a color positive image."[1] As described in the literature, "[w]hen you apply a negative filter to a color positive image, a static string of computer code converts complementary colors for each pixel in the original image. It then color reverses the image, where red areas of the image appear 'cyan-ish', green areas appear 'magenta-ish' and blue areas appear 'yellow-ish.'" As further described in the literature, "[a]fter the Negative-Invert Filter is applied, you get a picture that has high contrast, nothing more."

---

[1]The State offered the accompanying SDFI literature into evidence at the pretrial hearing on Appellant's motion to exclude the SDFI images at trial.

Appellant initially presented his request for an expert in an ex parte motion filed eighteen days prior to trial.[2] He alleged as follows in the motion:

> The state has notified defense counsel that the state intends to offer as evidence altered photographs produced by a Secured Digital Forensic Imaging Camera. Secured Digital Forensic Imaging purports to observe and record "subcutaneous" injury, that is, supposed damage to tissues below the skin which are not actually indicated by discoloration or other visible physical sign on the surface. In fact, SDFI is nothing more than a computer-generated image depicting an artistic representation of a purported condition which is not in fact visible or otherwise measurable or observable by any objective criteria. The state is proffering SDFI as a scientifically proven and reliable technology. Defendant requires expert assistance to testify as to the actual processes behind SDFI and the lack of scientific validity of this supposed technology.

Appellant asserted in the ex parte motion that his counsel had spoken with Sonja Eddleman, R.N., "a competent and qualified specialist in the field of forensic psychology or psychiatry." He further stated that she would charge $1,000 to review the State's proposed exhibits and testify at a pretrial hearing on their admissibility and that she would charge an additional $1,500 to testify at trial "regarding the principles, limited application, and lack of means of independent verification of such images." Appellant concluded the ex parte motion by stating that the services of an expert in SDFI were necessary to enable him to prepare effectively for trial. The trial court denied the ex parte motion by written order on January 6, 2012.

The trial court subsequently conducted a pretrial hearing on Appellant's motion to exclude the SDFI images. After the trial court ruled that the images

---

[2]A defendant is entitled to present a request for the appointment of an expert on an ex parte basis because he must reveal some details of his defensive theories in order to be entitled to the appointment under *Ake v. Oklahoma*, 470 U.S. 68, 82–83, 86 (1985). *See Williams v. State*, 958 S.W.2d 186, 191 (Tex. Crim. App. 1997).

6

would be admissible at trial,[3] Appellant orally re-urged his ex parte request for the appointment of an SDFI expert. The trial court denied Appellant's request for reconsideration.

Appellant additionally presented his request for an SDFI expert at the end of the first day of trial after the SDFI images were admitted into evidence. Appellant's counsel stated, "[A]t this time we renew our request for an expert to testify as to the limitations of the SDFI system, [its] inaccuracies and its non use in standard medical care, as we have previously identified an available expert to the Court in or [sic] request for same." Appellant's counsel further stated that his proposed expert was "a SANE nurse herself and an RN." The trial court advised Appellant's counsel to check on the proposed expert's availability and "let [the court] know tomorrow morning." The next day's proceedings make no mention of the availability of the Appellant's proposed expert. In his brief, Appellant states that "the renewed request was denied the next morning prior to resuming on the record."

To preserve error for appellate review, a complaining party must obtain an adverse ruling on the record. TEX. R. APP. P. 33.1; *see Cienfuegos v. State*, 113 S.W.3d 481, 488 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). If the trial court refuses to rule on a request, the complaining party must object to the trial court's refusal to rule. *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). In the absence of an adverse ruling on the record, Appellant did not preserve error on his renewed request for an expert after trial commenced.

With regard to Appellant's pretrial requests for the appointment of an expert, we review the trial court's rulings for an abuse of discretion. *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). When an indigent defendant makes a

---

[3]See our discussion below of Appellant's first issue pertaining to the admissibility of the SDFI images.

threshold showing that expert assistance would likely be a significant factor at trial, he is entitled to the appointment of an expert. *Ake*, 470 U.S. at 82–83, 86; *Griffith*, 983 S.W.2d at 286–87. To determine if a defendant is entitled to the requested expert, three factors are relevant: (1) the private interest that will be affected by the State's action; (2) the governmental interest that will be affected if the safeguard is to be provided; and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Ake*, 470 U.S. at 77; *Rey v. State*, 897 S.W.2d 333, 337 (Tex. Crim. App. 1995). The purpose is to ensure that the indigent defendant has access to a competent expert to assist in the evaluation of his defense. *Ake*, 470 U.S. at 77; *Griffith*, 983 S.W.2d at 286. The type of expert and the nature and complexity of the field of specialty must be considered in deciding if an expert will be helpful or a significant factor at trial. *Griffith*, 983 S.W.2d at 287. "The key question appears to be whether there is a high risk of an inaccurate verdict absent the appointment of the requested expert." *Busby v. State*, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999).

The burden is on the defendant to make a sufficient threshold showing of his particularized need for the expert's assistance. *See Griffith*, 983 S.W.2d at 286–87; *Rey*, 897 S.W.2d at 339. In order to carry this burden, a defendant must offer more "than undeveloped assertions that the requested assistance would be beneficial." *Williams*, 958 S.W.2d at 192 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 323–24 n.1 (1985); *Rey*, 897 S.W.2d at 339 (quoting same). The defendant must show both that there exists a reasonable probability that an expert would be of assistance and that denial of expert assistance would result in a fundamentally unfair trial. *Davis v. State*, 905 S.W.2d 655, 659 (Tex. App.—Texarkana 1995, pet. ref'd).

We analyze whether a defendant made a sufficient threshold showing by examining the facts and arguments before the trial court at the time of the

8

defendant's motion. *Rey*, 897 S.W.2d at 342 n.9. In his ex parte motion for appointment of an expert, Appellant asserted that he needed an expert to show that the SDFI process was unreliable and lacked scientific validity. However, he did not support this assertion with an affidavit from his proposed expert. Although Appellant's counsel verified the motion, the defendant must show more than the mere conclusions of defense counsel. *See Norton v. State*, 930 S.W.2d 101, 111 (Tex. App.—Amarillo 1996, pet. ref'd). Furthermore, Appellant alleged in the motion that his proposed expert was an "R.N." and that she was an expert "in the field of forensic psychology or psychiatry." Thus, the motion did not demonstrate that Appellant's proposed expert was an expert in a field related to the topic of digital photo enhancement. Appellant did not offer any additional or corrected information pertaining to his proposed expert's qualifications when he subsequently re-urged his motion.

We hold that the trial court did not abuse its discretion when it denied Appellant's motion for appointment of an expert. As stated above, a defendant must offer more "than undeveloped assertions that the requested assistance would be beneficial." *Williams*, 958 S.W.2d at 192 (quoting *Caldwell*, 472 U.S. at 323–24 n.1). Appellant did not make the required preliminary showing of his need to obtain an expert witness. We overrule Appellant's second issue.

Appellant's first and third issues address the admissibility of evidence at trial. We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

In his first issue, Appellant asserts that the trial court erred in admitting the SDFI images at trial. Appellant filed a pretrial motion challenging the SDFI images on the basis that they did not have proven scientific reliability. He

9

additionally alleged that their probative value was outweighed by the danger of unfair prejudice, confusion, or delay. On appeal, Appellant presents his scientific reliability contention as Issue "1A" and his unfair prejudice contention as Issue "1B."

The State called Butz as a witness at the pretrial hearing on Appellant's motion to exclude the SDFI images. She testified that she produced the contested photographs using SDFI by taking photographs of G.B.'s injuries and then transferring the images into the SDFI computer program. Butz explained that SDFI does not alter the original photograph but, instead, makes a copy of the photograph and then applies a filter to that copy. She noted that the filter reverses the colors in the photograph to show "a better outline of your bruising or your patterns." Butz stated that SDFI technology is readily accepted in "[her] field" in the medical community and widely used in sexual assault and child injury programs. She further testified that she had personally been using SDFI technology for two years.

On cross-examination by Appellant's counsel, Butz acknowledged that the colors of the SDFI image are different than those of the original photograph in that the entire color scheme of the original photograph is reversed. Butz stated that the SDFI process accentuates bruises and markings that are not immediately visual in the original photograph. She denied having any knowledge of how the process was designed. Butz testified that she was aware that other SANE programs use SDFI photo enhancement but that it is not used in "straight medical applications."

The trial court denied Appellant's pretrial motion to exclude the images produced by SDFI. In reaching its holding, the trial court stated that the SDFI images showed the "same obvious bruising" as did the original photographs but in a different color. The trial court also stated that it believed that the process by which SDFI images are produced is a "soft science" rather than a "hard science."

10

The trial court further opined that the fact that the SDFI images did not reflect what G.B. actually looked like could be either explained to the jury or revealed through cross-examination.

At trial, the State offered approximately seventy photographs of G.B. into evidence during Butz's testimony. Of these seventy photographs, twenty-two of them were SDFI images. The original photograph from which each SDFI image was made was also included within the photographs offered into evidence.

Appellant's counsel conducted a voir dire examination of Butz in the presence of the jury prior to the admission of the SDFI images. In doing so, counsel established that the color pattern of the SDFI images was changed from the originals, that G.B.'s body appeared paler in the SDFI images, and that the bruises appeared "more vivid and darker" than they actually appeared "to the naked eye." Appellant's counsel reiterated these differences between the SDFI images and the corresponding original photographs during his cross-examination of Butz. Appellant objected at trial that the SDFI images were not accurate depictions of what they purported to depict and that their prejudicial value exceeded their probative value. The trial court overruled Appellant's objections and admitted the SDFI images.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. TEX. R. EVID. 702. It is a trial court's responsibility under Rule 702 to determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). To be considered sufficiently reliable as to be of help to a jury, scientific evidence must meet three criteria: (1) the underlying

11

scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Vela v. State*, 209 S.W.3d 128, 133–34 (Tex. Crim. App. 2006); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

"Hard sciences" are those based on scientific methods that are susceptible to rigid scientific testing, such as chemistry; "soft sciences" include nonscientific disciplines that rely principally upon technical or specialized knowledge, skill, or experience, such as psychology. *See Weatherred v. State*, 15 S.W.3d 540, 542 n.5 (Tex. Crim. App. 2000). Because the distinction between various types of testimony may often be blurred, the Court of Criminal Appeals "explicitly refrained from developing rigid distinctions between 'hard' science, 'soft' sciences, and nonscientific testimony." *Morris v. State*, 361 S.W.3d 649, 654–55 (Tex. Crim. App. 2011). Soft sciences are fields that are based primarily upon experience and training as opposed to the scientific method. *Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W. 3d 720, 727 (Tex. Crim. App. 1999). *Kelly*'s requirement of reliability applies but with less rigor when soft sciences are at issue. *Id.*

The trial court concluded that the process of digitally enhancing photographs through the use of the SDFI process constituted a matter of soft science. We conclude that the trial court did not err in making this determination. The scientific or technical question concerning the SDFI process in this case is essentially a matter of comparing each SDFI image to the original photograph from which it was made. In this regard, the trial court noted that the SDFI imagines revealed the "same obvious bruising" as did the original photographs.[4] The task of comparing the original photograph to the SDFI image does not appear to be a matter that is

---

[4]We would be presented with a much different question if the SDFI images in this case depicted latent injuries that were not revealed in the original photographs.

particularly complex. *See, e.g.*, *Rodgers v. State*, 205 S.W.3d 525, 533 (Tex. Crim. App. 2006) (noting that the fields of tire comparison and shoe comparison are not particularly complex). Butz testified that the SDFI process is something that she has been trained to use and that it is used in her SANE program and other SANE programs in the state. Thus, the trial court had evidence that she possessed training and experience in the field. We conclude that the trial court did not abuse its discretion by determining that the SDFI images were scientifically reliable. We overrule Appellant's Issue 1A.

TEX. R. EVID. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay or needless presentation of cumulative evidence. *See Young v. State*, 283 S.W.3d 854, 874 (Tex. Crim. App. 2009). Our analysis under Rule 403 includes, but is not limited to, the following factors: (1) the probative value of the evidence, (2) the potential to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the State's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006). In determining whether the probative value of a photograph is substantially outweighed by the danger of unfair prejudice, we also consider "the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and other circumstances unique to the individual case." *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

We note at the outset that Appellant did not object to the forty-eight original photographs taken of G.B. by Butz at Hendrick Medical Center. Each of the twenty-two SDFI images were immediately preceded by the original photograph

from which they were made. As noted previously, the SDFI images revealed the same obvious bruising depicted in the original photographs. While the SDFI images of G.B. are disturbing and graphic, they are probative because they are accurate depictions of the extent of his injuries. *See Williams*, 301 S.W.3d at 691 (photographs were probative because they depicted victim's injuries). They are no more disturbing than the original photographs of G.B. Furthermore, there is nothing in the record to suggest that these photographs were "offered solely to inflame the minds of the jury." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004) (quoting *Martin v. State*, 475 S.W.2d 265, 267 (Tex. Crim. App. 1972)). To the contrary, the SDFI images were primarily used during the punishment phase to illustrate the "head-to-toe" nature of G.B.'s injuries. Because the SDFI images essentially depict the same injuries depicted in the original photographs, the trial court did not abuse its discretion in determining that their probative value was not substantially outweighed by the danger of unfair prejudice. We overrule Appellant's Issue 1B.

Appellant also asserts in his first issue that the SDFI images were not properly authenticated. We disagree. A photograph may be authenticated by the testimony of any witness who has personal knowledge that the particular item accurately represents the scene or event it purports to portray. *See Kephart v. State*, 875 S.W.2d 319, 321 (Tex. Crim. App. 1994). Butz, the sponsoring witness for the SDFI images, was the photographer that took the original photographs and the person that processed the photographs through the SDFI system. Accordingly, Butz's testimony was sufficient to authenticate the SDFI images.

Finally, even if we assume that the trial court erred when it allowed the admission of the SDFI images, we cannot say that Appellant was harmed by the error. The erroneous admission of evidence is subject to the nonconstitutional error standard set out in TEX. R. APP. P. 44.2(b). *Easley v. State*, 424 S.W.3d 535,

14

539–40 (Tex. Crim. App. 2014). Pursuant to Rule 44.2(b), an appellate court must disregard nonconstitutional error unless it affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, *after examining the record as a whole*, has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.*

The SDFI images were essentially cumulative of the original photographs from which they were made. Inadmissible evidence can be rendered harmless if other evidence is admitted without objection and proves the same fact that the inadmissible evidence sought to prove. *Brown v. State*, 757 S.W.2d 739, 740–41 (Tex. Crim. App. 1988). Furthermore, Appellant's counsel pointed out the differences between the SDFI images and the original photographs in his cross-examination of the sponsoring witness. Finally, the jury rejected the State's attempt to convict Appellant of a first-degree felony for the very serious head injury alleged in Count One. Instead of finding that Appellant intentionally or knowingly caused the head injury, the jury found that he recklessly inflicted the injury, thereby convicting him of a second-degree felony rather than a first-degree felony. *See* PENAL § 22.04(e). Accordingly, we have fair assurance that the SDFI images had very little influence on the jury. We overrule Appellant's first issue.

In his third issue, Appellant contends that the trial court erred in admitting evidence of the neurological injuries that G.B. suffered as a result of the head injury. Dr. Trammell, the neurosurgeon that performed emergency surgery to remove a portion of G.B.'s skull to relieve brain swelling, testified during the guilt/innocence phase that G.B. had "severe neurological deficit." Appellant objected to this testimony on the basis that it constituted evidence of an extraneous offense. Appellant additionally objected to evidence regarding the treatment that

15

G.B. received for the head injury on the basis that it constituted "victim impact" testimony.

A person commits the offense of injury to a child by causing (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury. PENAL § 22.04(a). Appellant contends that evidence of G.B.'s neurological injuries constituted evidence of an extraneous offense under Section 22.04(a)(2) because he was only charged in Count One with committing serious bodily injury under Section 22.04(a)(1). Appellant is correct in his contention that the offense of committing injury to a child by causing "serious mental deficiency, impairment, or injury" is a separate offense from causing "serious bodily injury." *See Stuhler v. State*, 218 S.W.3d 706, 717 (Tex. Crim. App. 2007) (requiring jury unanimity on the issue of whether the defendant caused "serious mental deficiency, impairment, or injury" versus "serious bodily injury"). However, we disagree with Appellant's argument that evidence of G.B.'s neurological injuries constituted evidence of an extraneous offense.

The Penal Code defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." PENAL § 1.07(a)(46). Evidence of G.B.'s neurological injuries was relevant to the question of whether he suffered "protracted loss or impairment of the function of any bodily member or organ." *See id*. Circumstances of the offense that tend to prove the allegations in the indictment are not extraneous offenses. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993); *Ramirez v. State*, 815 S.W.2d 636, 643 (Tex. Crim. App. 1991). Moreover, evidence of another crime, wrong, or act may also be admissible as same-transaction contextual evidence when several crimes are intermixed, blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony of any one of them

16

cannot be given without showing the others. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). On the record before us, the trial court could have reasonably concluded that evidence of G.B.'s neurological injuries constituted admissible same-transaction contextual evidence. Accordingly, the trial court did not abuse its discretion in admitting evidence of G.B.'s neurological injuries. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE


August 29, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.